## No. 12,279.

PEOPLE'S BANK OF NEW ORLEANS VS. GEORGE P. P. DAVID ET AL.

The heir who purchases at the sale, to effect the partition to complete his title, must pay the surplus of the price over the portion coming to him when the amount due by him is fixed by the partition. Civil Code, Art. 1343.

When such heir mortgages the property, the *proces verbal* of adjudication or act of sale to him showing non-payment of the price, the mortgagee will be deemed apprised that the title of the co-heirs entitled to the payment of the price so that they may get their shares, is not divested, and the mortgage will be treated as operative only to the extent of the mortgagor's ownership of the property as heirs, not enlarged by the incomplete partition.

The court distinguishes this case from the line of decisions that uphold mortgages acquired in good faith upon the faith of complete titles spread on the records. 1 An. 208; 4 An. 84; 45 An. 1085; 48 An. 1160.

Nicholls, C. J., and Breaux, J., concur in decree.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*E. Howard McCaleb* for Plaintiff, Appellant.

*Merrick & Merrick* and *Gus. A. Breaux* for Louis Leon, Tutor of Agnelly Minors, Appellees and Appellants, praying for nullity, etc.

Argued and submitted December 3, 1896.
Opinion handed down January 4, 1897.

The opinion of the court was delivered by

MILLER, J.   This is an appeal by the plaintiff from the judgment sustaining the intervention of the minor heirs of Joseph David, claiming to be paid their shares out of property of the succession alleged to have been acquired in the partition proceedings by the major heirs of the deceased, afterward mortgaged by them to the plaintiff, the proceeds in controversy being derived from the sheriff's sale under plaintiff's writ of seizure and sale.

The deceased, Joseph David, left several major heirs, one minor child and the children of his predeceased daughter, these grand-children, represented by their tutor, being the intervenors.   Shortly after the death of the deceased partition proceedings were insti-tuted, the partition was decreed, and there was the usual reference of the parties to the notary.   Under the advice of the family meet-ings, the private sale of portions of the property was authorized, and the residue, mainly real estate in this city, was sold at auction, the major heirs becoming the adjudicatees.   No portion of the price was paid, each act of sale reciting the price was to be accounted for in the partition proceedings.   The subsequent proceedings before the notary were the settlement of the accounts, the formation of the active mass, the deductions to be made and the ascertainment of the distributive shares of the heirs, that of the intervenors being fixed at sixteen thousand and forty-five dollars.   No cash was paid by the purchasing heirs, and hence none was distributed in the par-tition proceedings, but the statement is made by the notary that the liability of the heirs by agreement is to be settled "outside the par-tition."   By the terms of the partition the major heirs were treated as owing the amount of the adjudication, or so much as was requisite to pay the shares of the minor heirs. The partition was homologated. Subsequently, the major heirs, who had purchased but never paid the amounts of the adjudications, mortgaged the property to the plain-

tiff, and under the bank's writs, as already stated, the property was sold and the proceeds realized.

The intervention of the minors alleges in substance the invalidity of the partition proceedings, because the major heirs never having paid the price, there was no distribution or completion of the proceedings; hence the title of the minors in the succession property was never divested; that the plaintiff had knowledge of the defect in the proceedings, that its mortgages are void as respect the minors and the prayer is that the minors be decreed entitled to receive their distributive shares from the proceeds. The plaintiff excepted to the intervention on various grounds not discussed here, and the exceptions overruled, answered in substance, setting up the partition proceedings, averred that the assets, so far as they consisted in open accounts and bills receivable, purchased by the major heirs at the partition sale, were not collected; that the entire property of the succession was not more than sufficient to pay the debts; that all the heirs guaranteed, minors included, the debts due the succession and bills receivable; that the major heirs have paid all the succession debts and have paid the minors all due to them. The judgment of the lower court maintained the oppositions to the extent of directing the payment to the minors of one-eighth of the proceeds. There is an answer to the appeal, praying that the amount awarded be increased to the full distributive share of the minors fixed in the partition.

The argument on behalf of the bank maintains that the mortgage, having been acquired on the faith of the recorded titles of the major heirs, is not affected by any irregularities in the partition, or frauds of the major heirs; and it is insisted, in view of the duty of the tutor to protect the rights of the minors in the proceedings, the recourse of the minors should be on him and not against the bank, the mortgagee in good faith.

As we think the good faith of the bank in acquiring the mortgage notes is unimpeached, we have been solicitous to find the basis for extending to it the protection invoked by the argument. The nature of the title on which the bank's mortgage depends confronts us at the outset. That title, spread on the public records, explicitly states the non-payment of the price by the major heirs. In effect the title was the recital of an adjudication and the unfulfilled obligation of the major heirs imposed by that adjudication. If this purchase by

Bank vs. David et al.

the heirs, without one dollar paid under it, is to be deemed sufficient
to vest title in the purchasing heir, it must occur that notwithstand-
ing the partition exacted by law and ordered by tne court, it would
be in the power of any heir by simply procuring and recording an
adjudication to himself to appropriate the entire succession property
bp a sale or mortgage, and thus defeat the law and the order of court
for an equal partition among all the heirs. It is true such a result
would doubtless, be averted by recording the *proces verbal* in the man-
ner requisite to preserve the vendor's privilege, but the heir, desirous
of securing to himself the succession property, could obtain this
advantage and profit by the omission to record the privilege, if this
theory of title without payment of the price is to be sustained. The
grave consequences of maintaining this theory is made more impres-
sive by its operation on minors, illustrated in this case, if the theory
is maintained, of the loss to the minors of their entire patrimony
claimed to result from the mortgage of the property by the major
heirs, without payment by them of a dollar of the price, and that
non-payment, announced in the act, spread on the public records
and notic to all.

The Napoleon Code gave the co-heirs a mortgage on the property
sold to effect the partition for the payment of the price of the licita-
tion, as well as to secure the return which by the partition one heir is
to make to theother. Code Napoleon, Arts. 833, 2109. That Code
required the registry of this mortgage within a fixed period, or the
mortgage was ineffective. Formerly, our laws gave a similar mortgage,
but there is none now, of the co-heirs, arising out of the partition pro-
ceedings, except that given by Art. 1333 of the Code, and that must
be recorded to affect third persons. The mortgage under Art. 1333,
restricted to the return of money the heir is to make, is not as broad
as that given by the Napoleon Code. The deduction of the argu-
ment for defendant that the minor heirs had no mortgage for their
distributive share when the bank took its mortgage note, is clear
without reference to the Napoleon Code introduced in the argument
for illustration. Assuming that the privilege of the vendor on the
immovable sold applies in favor of the heirs, for none is given to
the heirs specifically, it follows, too, there was no privilege, for none
was recorded. Civil Code, Arts. 3271, 3274, amended by Act No. 79
of 1879. In our view the contention of the bank is sustained that
the minors had no mortgage or privilege.

The defendant contends with great earnestness for the protection given by law to mortgages accepted on the faith of recorded titles. This protection has been of frequent recognition. Succession of Ashbridge, 1 An. 208; Boudreau vs. Bergeron, 4 An. 84; Broussard vs. Broussard, 45 An. 1085; Thompson vs. Whitbeck, 47 An. 49; Lacassagne vs. Abraham, 46 An. 1160. If the acts of sale to the heirs who granted the mortgage had announced the completion of the partition, including the payment of the price or settlement of the distributive shares, the most essential part of the proceeding; or if the acts had contained the recital that the property mortgaged had fallen to the heirs making the mortgage in settlement of their shares; or if in the acts there occurred any expression of completion of title, such acts, signed by the proper parties, placed on record, would present the controversy in a far different phase. The title of record here gave notice that the mortgagors were the heirs of J. P. David, and heirs, as it is determined in the cases cited by defendant, none the less take by inheritance through purchasers at sales to effect partitions. Troxler vs. Coller, 33 An. 431; Kernan vs. Baham, 45 An. 799. But the act also gave distinct notice that the price of their purchase had not been paid, and under the law all are apprised that the purchasing heir must pay the price as soon as the amount due by him is fixed by the partition. Civil Code, Art. 1342. In the case from 35 An. 546, Wade vs. Murray, the creditor took his mortgage on property which, as well as we can understand the case, had been bought by the tutor of minor heirs, the tutor himself being a co-heir. The suit was brought on behalf of the minors for the resolution of the sale, on the ground they had not been paid their shares. The court decided the resolutory condition did not apply to a partition sale, and maintained the title of the purchaser who bought on the faith of the mortgage by the co-heir who had acquired at the partition sale. In that case the purchaser, at the partition sale, was entitled to receive all that was due to his minor children; and the law deemed that payment accomplished when he bought. The payment was in legal contemplation the accompaniment of the purchase; that payment the act on the public records announced. The court, in the opinion, states the purchaser was the debtor entitled to receive, as tutor, that which he, as purchaser, owed his children. On the faith of that title the court maintained the mortgage the purchaser gave. The difference

between that and the case here is, we think, obvious.    Here, the title of the purchasing heirs shows the *non*-payment of the price, not as in the case of Wade, that payment accomplished.    It imports the reverse.    We pass then from the argument that seeks to support the mortgage, by the citation of the line of decisions maintaining rights acquired on the faith of titles exhibited by the public records, conveying ownership.

When the deceased leaves two or more heirs they hold the property of the succession in common.    The definitive partition makes a change.    The division in kind gives to each the title to that portion allotted to him.    The sale consummated to effect that partition has the effect of passing title to the purchaser.    If the purchaser is not the heir he completes title by paying the price at once.    If an heir, he is to make payment, deferred, however, until the partition proceedings, and his share in the succession property is fixed.    In either case payment of the price is exacted.    Can we then hold that the purchase by the heir, subject to his obligation to pay the price, conferred title, though no price was paid.    The court conducting the partition proceedings undoubtedly, can compel a fresh adjudication, if the purchasing heir fails to pay the price essential to effect the partition contemplated by the sale.    The purchasing heir holds under that obligation weaved by the law into the right he acquires under the adjudication.    Civil Code, Art. 1343.    If without that payment he undertakes to mortgage or convey, it is difficult to perceive he conveys any greater right than he possesses. ' The minors owned one-eighth of the property.    The mortgage by six of the heirs was operative on their interest.    But it is our conclusion the purchase by them of the minor's interest, unaccompanied with payment of the price, did not divest their ownership, and their undivested interest was announced by the title in virtue of which the mortgage claimed by the bank was granted.

It is strenuously urged, on behalf of the bank, that the recourse of the minor is on their tutor for failure to record their claims.    The law gives them no mortgage.    There was, therefore, none to record.    If it is intended by the argument to affirm, the tutor should have recorded the acts of sale to the major heirs as privileges, conceding that the privilege given to vendors exists in partition sales, we can hardly see our way clear to shield the bank from responsibility when the act of sale, in our view, on its face, announced that the mortgagor had title

to only six-eighths of the property; that was the extent of their title by inheritance not enlarged by an uncompleted purchase.

It is urged by defendant that the partition and its homologation precludes this claim of the minors. If the price of the property had been paid, and the complaint was as to its distribution, it might well be insisted the homologation of the partition confined the minors to the appropriate proceeding to annul the partition. But the price never having been paid, the partition does not deal with the fund that should have been derived from the sales and distributed. We do not perceive any objection to the demand of the minors because of the partition and its homologation. The exceptions of *res judicata* based on the homologation of the partition, and that the lower court had no jurisdiction, do not strike us as capable of support, and have not been pressed. In the oral argument, if our appreciation is correct, there was the suggestion that the amount the minors should have received in this partition had been invested for them in the stock of a corporation organized by the major heirs. If this was done with the sanction of their tutor, we could not recognize that method of discharging the obligation of the major heirs of paying the price out of which the minors were to receive their distributive share.

We are asked on behalf of the minors to increase the judgment to the full amount of the distributive share of the minors fixed by the partition proceedings. This would be to treat the partition as final, and to enforce as a debt due by the major heirs the distributive share of the minors fixed by the partition. It is clear we can not deal with any personal liability of the major heirs on an opposition claiming the proceeds of the property. Nor can we give effect to any such debt on the theory that it is secured by privilege or mortgage, for neither exists. The judicial sale from the proceeds of which the minors seek to be paid was made under the mortgage by the major heirs. With neither privilege or mortgage their opposition affirms that sale, and all they can claim is their interest in the proceeds, *i. e.*, to the extent of one-eighth as heirs, irrespective of an attempted partition, which, in our view, did not divest their interest. For the debt due them by the major heirs, arising out of their appropriation of other assets of the succession, it seems to us redress must be sought in some other mode. The only standing the minors have in this proceeding is as that of coproprietors seeking as such to be paid to their interest out of the proceeds of the com-

mon property sold under the mortgage granted by the other co-heirs. That was the relief given by the judgment of the lower court, and we think it is the measure of all that can be claimed in this proceeding.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.

### CONCURRING OPINIONS.

NICHOLLS, C. J.   I concur in the decree.   Where a piece of property belonging to a succession is sold for cash at a judicial sale made to effect a partition among the heirs, and it is adjudicated to the major heirs, who, instead of paying the purchase price, retain the same under the right accorded to them by Arts. 1343 and 2625 of the Civil Code, I think the title passes, but that the ownership acquired is an "imperfect" not a "perfect" ownership.   The ownership becomes perfect only when the purchase price has been settled for between the heirs.   "Imperfect ownership" (says Art. 492 of the Civil Code) "only gives the right of enjoying and disposing of property when it can be done without injuring the rights of others—that is, of those who may have real or other rights to exercise upon the same property."

A person taking a conventional mortgage upon property held by another under the circumstances above stated, takes it *cum onere*. His mortgage rights are subordinated to the payment or settlement of the price by the adjudicatee.

I think the rights of the co-heirs upon the property exist independently of a technical right of mortgage or privilege.   It is a right inherent in the property affecting the very tenure itself of the ownership, which is not affected by omitting to record (or cause to be reinscribed when once recorded) in the mortgage records the *proces verbal* by which the price was retained.   As stated in the succession of Canonge, 1 An. 210: though the right be one neither of mortgage nor privilege, it is "another right equivalent in many respects to that of mortgage in others superior for the purpose of securing the amount due."   C. C. 2010, 2011, 2012, 2013, 2014, 2015.

BREAUX, J.   In regard to the effect of the adjudication I concur with the Chief Justice, and in all other respects I concur with the opinion of JUSTICE MILLER.